**UNITED STATES of America, Plaintiff,**

**v.**

**Robert Lee MAIN, Defendant.**

**Crim. A. No. 2020.**

United States District Court, D. Delaware.

May 8, 1970.

the Chrysler Plant in Newark, Delaware where Main was employed, and of FBI Special Agent James D. Snyder were offered to support the issuance of the warrants. On the afternoon of November 21, 1969, Federal agents, acting under the authority of the search warrants, intercepted Main near Fairhill, Maryland while he was en route from his work to his home in Pennsylvania. A search of his person uncovered an "Idea" notebook, slips of paper with numerous numbers written thereon, some initialled one dollar bills and other slips of paper with numerals circled and dated. Some Irish Sweepstakes tickets were discovered during a search of the car.

Main was indicted by the Grand Jury of this District on January 20, 1970 for the interstate transportation of gambling paraphernalia in violation of 18 U.S.C. § 1953. The defendant, having entered a plea of not guilty, has now moved to suppress the evidence seized under the warrants, contending that the warrants were impermissibly issued without probable cause in violation of the Fourth Amendment.

The Court recently has considered the standards for evaluating an affidavit which relies on an informant's report to sustain a finding of probable cause.[1] The Court, therefore, will not repeat its prior discussion but will focus on the application of the relevant standards to the affidavits supporting the issuance of the search warrants in question.

Although a large part of the affidavits is excess verbiage,[2] sufficient information is presented by the two affidavits to justify a finding of probable cause—to warrant "a prudent man in believing that [an] offense has been committed." Henry v. United States,

F. L. Peter Stone, U. S. Atty., and Norman Levine, Asst. U. S. Atty., Wilmington, Del., for the United States.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, Del., for defendant.

## OPINION

LATCHUM, District Judge.

On November 20, 1969, United States Commissioner H. Allen Mezger, Baltimore, Md., issued search warrants for the person of Robert Lee Main and for a "1966, 1967, 1968 or 1969 White Ford Sedan" with a designated Pennsylvania license plate. Affidavits of Robert W. Carpenter, Chief of Plant Protection at

1. United States v. Stafford, 303 F.Supp. 785 (D.Del.1969). United States v. Manetti, 309 F.Supp. 174 (D.Del.1970).

2. Numerous paragraphs of both the Carpenter and Snyder affidavits, providing details of Main's travel with other men from the Chrysler plant to his home in Nottingham, Pennsylvania are of no significance in indicating probable gambling activity. (Pars. 6–10, 12–19 of the Carpenter affidavit; 5, 10–13 of the Snyder affidavit). Although some indication of Main's interstate travel is appropriate in regard to a suspected violation of 18 U.S.C. § 1953, there is no need to belabor this jurisdictional fact in an affidavit submitted to establish probable cause.

361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). According to paragraph 20 of the affidavit of Robert W. Carpenter, one E. R. Carpenter, a fire marshal working under the supervision of the affiant, observed Main on October 23, 1969 "hand an unknown employee a small card or cards." The affiant further asserted that "football pools look like small cards." The magistrate reasonably could conclude that the "small card or cards" were football pools, a type of gambling paraphernalia whose interstate transportation is prohibited by 18 U.S.C. § 1953.

Further, paragraph 21 of the Robert Carpenter affidavit states that a "confidential source," known to the affiant for several years and who has provided reliable information on 12 prior occasions, has observed Main, while standing with a group of other plant employees, holding "a racing paper in one hand and a large amount of paper currency in the other hand." The reliable informant then witnessed Main hand money to two individuals in the group.

These two paragraphs provide reliable, specific details of possible gambling activity. Although these two factual averments standing alone would not be sufficient to establish probable cause, the affidavit also presents the reports of several informants stating that Main is engaged in gambling activity at the Chrysler Assembly Plant in Newark. The suspicion engendered by these last mentioned reports, when further amplified and substantiated by the observation of the two specific instances of possible gambling activity referred to above, provided a sufficient basis for a finding of probable cause and the issuance of the challenged search warrants by the magistrate.

■ The informants' reports properly may be considered in determining the sufficiency of the affidavit, even though these informants' reports, evaluated initially without regard to the other allegations of the affidavit as required by *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), would be insufficient in themselves to establish probable cause. Although the affiant avers that each informant has proved reliable in the past, each informant's report (except for paragraph 21 of the Snyder affidavit) relies on the observation and conclusions of third parties whose past reliability is not established and whose identity is not specified. For example, paragraph 4 of the Carpenter affidavit states that Main "has been suspected of illegal gambling activity at the plant by [the affiant] and other personnel" in the affiant's department (Plant Protection).[3] The basis of this suspicion is stated to be information "received from confidential sources who are employees of the plant and who have observed Main accepting bets." Such information is said to have come from "numerous and different sources," leading the affiant to conclude or suggest that it is "common knowledge among employees" of the Chrysler Assembly Plant that Main is engaged in gambling.

An allegation that it is "common knowledge among employees" of the plant that Main is engaged in gambling should not in itself under *Spinelli* establish the specific reliability of the informant, i. e., that he has obtained his information in a reliable way. Paragraph 4 further alleges that the confidential sources who are employees of the plant "* * * have observed Main accepting bets." If a reliable informant had observed Main accepting bets, this allegation would be sufficient for a magistrate to find probable cause for the issuance of a search warrant. Here, however, the

3. The reliability of the affiant Robert Carpenter on previous occasions is not established specifically by the supporting papers. The reliability of the Plant Protection Director, however, is not specifically challenged by the defendant here, and this Court independently is satisfied that an identified person of his responsibility properly could be found to be reliable by the magistrate. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

reliability of the confidential sources who are plant employees has not been established.

Paragraph 1 of the Snyder affidavit states that it is known from information provided on September 30, 1969 by an informant who has proved reliable on ten different occasions in the past that Bob Main, more commonly known as "Fireball", is accepting bets on "horse races, lotteries and sporting events at the Chrysler Assembly Plant in Newark, Delaware." The reliable informant obtained this information from an employee in the materials department at the Chrysler Plant, who "has seen Main picking up football pools for the purpose of sale." The past reliability or identity of this "employee" is in no way indicated.

In paragraph 3, an informant who is an employee of the Newark Chrysler Assembly Plant and who is known to be reliable to a Delaware police officer reported his conclusion, based on personal contact with "numerous" other Chrysler plant employees, that one "Fireball" is engaged in taking bets at the plant.

Paragraph 7 states that a confidential source, who has given reliable information in the past to another agent of the FBI, advised the affiant that "Main is generally known within the community [of Nottingham, Pennsylvania, where Main resides at a particular address known to the confidential source] to receive and record horse bets, number bets and bet on sporting events." This source stated that he had "personal knowledge of individuals who have placed bets with Main." The affiant further stated in paragraph 7 that the informant "has resided in the Oxford-Nottingham, Pa. area for forty years, has known Main for 15 to 20 years and holds a position of public responsibility and trust in the community."

In summary, the informants' reports in paragraph 4 of the Carpenter affidavit and paragraphs 1, 3 and 7 of the Snyder affidavit do not meet the second standard of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.E.2d 723 (1964) and Spinelli v. United States, supra—that there be an adequate indication that the informant obtained his information in a reliable manner. Although there is a statement of the circumstances on which the informant based his conclusion, this statement indicates that the reliability of the informant's sources of information was not fully established in accordance with the standards of Aguilar and Spinelli. As these standards were stated by Justice White concurring in Spinelli—"If the affidavit rests on hearsay—an informant's report—what is necessary under Aguilar is one of two things: the informant must declare either (1) that he has himself seen or perceived the fact or facts asserted; or (2) that his information is hearsay, but there is good reason for believing it—perhaps one of the usual grounds for crediting hearsay information * * * if, for example, the informer's hearsay comes from one of the actors in the crime in the nature of admission against interest, the affidavit giving this information should be held sufficient." (393 U.S. at 425, 89 S.Ct. at 593).

Although the government has not contended that any of the four informants' reports discussed above provide information that would be admissible as an exception to the hearsay rule, it may be that the "common knowledge" of fellow employees and the general knowledge of the members of a residential community concerning alleged gambling activity by a member of these "communities" would be admissible as evidence of reputation as an exception to the hearsay rule. Whether such information, however, although admissible under an exception to the hearsay rule, should be given the same weight in evaluating probable cause as other information admissible under this exception—(such as an admission against interest by one of the alleged participants in criminal activity—the example cited by Justice White in Spinelli) is a question of importance but one which this Court need not consider

here. In the present case, the general reputation of a suspect in a defined community in regard to criminal activity, as reported by a reliable member of that community, is not offered as an independent and sufficient basis for probable cause. The question before this Court, rather, in regard to these informants' reports is whether such reports can be given any weight at all in evaluating the magistrate's finding of probable cause.

This Court does not understand either the plurality opinion by Justice Harlan in *Spinelli* or the concurrence of Justice White to preclude completely *any* reliance on an *informant's* report which in itself would not be sufficient to establish probable cause under the standards of *Aguilar* and *Spinelli*. The Court in *Spinelli* recognized that an informant's tip insufficient "to provide the basis for a finding of probable cause" is not necessarily "so insubstantial that it could not properly have counted in the magistrate's decision."[4] The report of a reliable informant that numerous employees in a particular assembly plant had observed an individual engaged in gambling, while inadequate in itself to establish probable cause under the standards of *Spinelli*, nevertheless fairly may give rise to a certain suspicion of gambling activity. A further quantum of suspicion, inadequate in itself to establish probable cause but nonetheless relevant to the overall consideration of the affidavit, is provided by the other reports of informants discussed above. Such suspicion, when corroborated by specific, relevant and sufficient factual detail, can ripen into a finding of probable cause to support the issuance of a carefully limited search warrant by a disinterested magistrate. " * * * [I]t is soundly established that an informant's report which itself fails to establish probable cause may be sufficiently corroborated by independent observation of a suspect's conduct, if the latter tends to confirm the information in the report

or otherwise to support a conclusion that the suspect is engaged in committing a crime." United States v. Acarino, 408 F.2d 512, 515 (2d Cir. 1969). Such relevant detail is provided here (in paragraphs 20 and 21 of the Carpenter affidavit) and therefore, the magistrate's finding of probable cause and issuance of the search warrants were justified.

■ The defendant also contends that the seizure of an "Idea" notebook and various other gambling records and paraphernalia from his person and his automobile violated the Fifth Amendment prohibition against compelled self-incrimination. This claim is without merit. The various items seized from his person and automobile are not "testimonial" or "communicative" in nature, and their introduction into evidence will not compel the defendant to become a witness against himself in violation of the Fifth Amendment. Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 302–303 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The items seized—such as nine slips of paper containing "numberals 1–70" (sic) with certain named individuals paired with a sum of money, and an "Idea" notebook "with 20 pages bearing numbers and writings thereon or in blank" are simply gambling records and paraphernalia, whose seizure and introduction in evidence involve no violation of the Fifth Amendment.

In seeking to bring the seizure of this gambling paraphernalia within the scope of the Fifth Amendment, the defendant places principal reliance on Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). In *Boyd*, a section of the customs and revenue laws of the United States authorized the court, on motion of the government attorney, to require the production by the defendant of certain books, records and papers in court. If the requested documents were not produced, the allegations of the government attorney as to their contents

4. 393 U.S. 410, 418, 89 S.Ct. at 515.

were to be taken as true. The Court in *Boyd* held that this procedure violated both the Fourth and Fifth Amendments. In the course of its opinion, the Court stated that "we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself." (116 U.S. at 633, 6 S.Ct. at 534).

*Boyd* is clearly distinguishable from the present case on several grounds. First, *Boyd* was decided on the premise that the Fourth Amendment permitted only the seizure of the fruits and instrumentalities of crime, while prohibiting the seizure of "mere evidence" of a crime. This distinction grew out of the concept that property interest controlled the scope of Fourth Amendment protection. "Warrants were 'allowed only where the primary right to such a search and seizure is in the interest which the public or complainant may have in the property seized.'" Warden v. Hayden, 387 U.S. 294, 303, 87 S.Ct. 1642, 1648. No separate governmental interest in seizing evidence to apprehend and convict criminals was recognized. The Court in *Boyd* reasoned that because the government had no interest in the invoices kept by the defendant other than as evidence against him, permitting the introduction of these papers in evidence would compel the defendant to become a witness against himself. Any limit placed on the power of search and seizure under the Fourth and Fifth Amendments, based on a distinction between "mere evidence" and the fruits and instrumentalities of crime, was eliminated by Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). To the extent that *Boyd* was premised on this distinction, its reasoning is clearly no longer applicable to the facts of this case.

The defendant contends, however, that Warden v. Hayden, "expressly carved out the *Boyd* case as an exception" to the abrogation of the mere evidence rule. This contention is not correct. In ruling that the introduction of the defendant's clothing into evidence did not result in compulsory self-incrimination, the Court in Warden v. Hayden simply noted that "this case * * * does not require that we consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure." (387 U.S. at 303, 87 S.Ct. at 1648).

Even though Warden v. Hayden leaves open the possibility that certain "private books and papers", because of their "very nature", may not be introduced in evidence consistently with the Fifth Amendment, gambling paraphernalia, the items involved here, were recognized in Adams v. City of New York, 192 U.S. 585, 24 S.Ct. 372, 48 L.Ed. 575 (1904) as proper objects of a search under the "mere evidence" doctrine relied on in *Boyd*. In *Adams*, where a conviction for possession of gambling paraphernalia was challenged in part on Fifth Amendment grounds, the Court, after carefully reviewing *Boyd*, stated: "The right to issue a search warrant to discover stolen property or the means of committing crimes is too long established to require discussion. The right of seizure of lottery tickets and gambling devices, such as policy slips, under such warrants, requires no argument to sustain it at this day." (192 U.S. at 598, 24 S.Ct. at 875).

Thus, it is not now necessary to consider what may be the remaining sphere of protection accorded to an individual's "private books and papers" under *Boyd*, because the gambling paraphernalia involved here were not within the original sphere of the protection defined by *Boyd*. The defendant has cited no case excluding the admission into evidence of gambling paraphernalia on Fifth Amendment grounds, or which even calls into question the statement of the law set forth in *Adams*.[5] This case is very

---

5. The seizure of gambling paraphernalia and its introduction into evidence has been consistently upheld. United States v. Sigal, 341 F.2d 837 (3rd Cir. 1965) cert.

far from even a colorable claim of Fifth Amendment privilege.

An order will be entered denying defendant's motion to suppress.

den. 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965) (seizure of number slips and other gambling paraphernalia); United States v. Boyette, 299 F.2d 92 (4th Cir. 1962) cert. den. sub nom. Mooring v. United States, 369 U.S. 844, 82 S.Ct. 875, 7 L.Ed.2d 848 (1962) (records of the receipt of illegal earnings); Miller v. United States, 354 F.2d 801 (8th Cir. 1966) (personal records of performance of illegal abortions). Although the introduction and seizure of such evidence was found valid in these cases, it does not appear, however, that the Fifth Amendment claim was presented.