UNITED STATES of America

v.

William CIHAL et al.

Crim. A. No. 71-61.

United States District Court,
W. D. Pennsylvania.

Jan. 13, 1972.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., John M. Elias and Thomas A. Bergstrom, Sp. Atty., U. S. Department of Justice, Pittsburgh, Pa., for plaintiff.

James K. O'Malley, Pittsburgh, Pa., for William Cihal, John La Gorga, Michael J. Martorella, Anthony J. Martorella, Gilbert Martin and Ned T. Lehr.

R. J. Rotatori, Cleveland, Ohio, for Joseph J. La Nese.

Alan Frank, Pittsburgh, Pa., for Salvatore Williams.

Martin M. Sheinman, Pittsburgh, Pa., for Salvatore Williams, Adoph Williams, and William Regan.

Richard A. Ferris, Pittsburgh, Pa., for Theodore Michenzi.

Harold Gondelman, Pittsburgh, Pa., for Harold Lee Margolis.

OPINION

WEBER, District Judge.

In this prosecution involving twelve co-defendants, the defendants have raised a number of objections relative to the obtaining of evidence under the wiretap provisions of Title III, Omnibus Crime Control and Safe Streets Act of 1968, 18 United States Code § 2510 et seq.

An evidentiary hearing on the motion to suppress has been held and the United States has filed documentary material in the form of affidavits in response to the particular motion addressed to the problem herein considered, Defendants' Motion to Compel Government's Admissions to Certain Unlawful Acts. While various other motions to suppress the

evidence secured by wiretap are based on other grounds not herein considered, the specific motion to compel Government's admissions to certain unlawful acts forms the basis of a specific motion to suppress on the grounds herein stated and has been so treated by the parties.

The statute provides specific requirements applying to a motion to suppress this type of evidence:

"Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10) (a).

The defendants' motion to suppress considered herein is made on the basis that the conditions imposed by 18 U.S.C. § 2516(1) were not followed:

"(1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications. . . .".

█ The defendants contend that neither the Attorney General, nor any Assistant Attorney General specially designated by the Attorney General, authorized the application to a Federal judge for the order authorizing or approving the interception of the communications involved herein.

The application made to the Federal judge in the instant case contained a letter dated August 25, 1970, on the letterhead of the Department of Justice, Assistant Attorney General, Criminal Division, bearing the written signature "Will Wilson" above the typewritten designation "Will Wilson, Assistant Attorney General." The letter recites:

"Accordingly, you are hereby authorized, under the power specially delegated to me in this proceeding by the Attorney General of the United States, the Honorable John N. Mitchell, pursuant to the powers conferred on him by Section 2516 of Title 18, United States Code, to make application to a judge of competent jurisdiction for an order pursuant to Section 2518 of Title 18, United States Code, authorizing the Federal Bureau of Investigation to intercept wire communications from the above-described two telephones for a period of fifteen (15) days."

In response to the defendants' request to compel admissions of fact the Government has produced the affidavit of Henry G. Petersen, who at the time involved was a Deputy Assistant Attorney General in the Criminal Division of the Department of Justice which affidavit states that he signed the name of Will Wilson to the letter dated August 25, 1970 authorizing the application to the court, and that in so signing he acted in accordance with the authorization of Will Wilson and the standard procedures of the Criminal Division. The Petersen affidavit of December 9, further recites that "the signing of Will Wilson's name was in conformity with the standard procedure of dispatching such a letter in every case in which Will Wilson had been specially designated on an *ad hoc* basis to authorize the applicant to make the application."

In further response to defendants' motion to compel admissions of facts the United States has supplied an affidavit of Sol Lindenbaum, Executive Assistant to the Attorney General of the United

States,[1] which states that on August 25, 1970 he approved a request for authority to apply for the original interception order in this case, and later for the subsequent extension of the order. He further avows that in both instances he specially designated Will Wilson, Assistant Attorney General, Criminal Division, to authorize the application. He states that in doing so he acted pursuant to authorization by the Attorney General under 28 United States Code, Section 510.

28 United States Code, Section 510, reads as follows:

"The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

A further affidavit of Henry E. Petersen makes further explanation of what was done in this case by stating that after the request for authorization to make application for wire interception orders had been reviewed by a special unit within the Criminal Division and processed through intermediate levels to him with a recommendation for approval, he examined them and forwarded them to the Office of the Attorney General with recommendations that the authorizations be granted. He states that "Will Wilson did not examine the files or expressly authorize an application as to either request." He further states that following the approval of the request in the Office of the Attorney General the letters of notification to the applicant that he was authorized to present the applications was sent by the Criminal Division bearing the signature of Will Wilson made by him. He further states that he signed Will Wilson's name because Will Wilson had authorized him to sign his name and dispatch such letters of authorization in every instance in which the request had been favorably acted upon in the Office of the Attorney General, and he had been specially designated on an *ad hoc* basis to authorize an applicant to make application for an interception order.

The Government's response admits that this case presents a situation where Sol Lindenbaum, the Executive Assistant to the Attorney General, approved the original request and Henry Petersen acting upon the approval of the Office of the Attorney General signed Will Wilson's name to the letters of authorization. The Government contends that, while conceding the procedures employed in this case did not conform to the technical language of the statute, nevertheless the applications were approved by the Office of the Attorney General and that this procedure complied with the legislative intent of Section 2516(1).

In determining the intent of Congress with respect to the provisions of Section 2516 we may compare it with the similar authority granted under 18 United States Code 2514, also a part of Title III of the 1968 Act, which provides for the approval of the Attorney General for the grant of immunity for a witness who is compelled to testify. We note that the authority given the Attorney General under Section 2514 does not contain the additional qualifying statement of Section 2516, "or any Assistant Attorney General specially designated by the Attorney General." In In re: December 1968 Grand Jury, John DiDomenico v. United States, 420 F.2d 1201 [7th Cir., 1970], it was held that the letter of au-

1. The Executive Assistant to the Attorney General is not an office created by statute as is the Deputy Attorney General or the nine Assistant Attorneys General who are appointed by the President by and with the advice and consent of the Senate, to assist the Attorney General in the performance of his duties, 28 U.S.C. §§ 504, 506. Rather it is a post established in the Dept. of Justice by administrative regulation to assist the Attorney General in various matters submitted for the Attorney General's action and perform such other duties and functions as may be specially assigned from time to time by the Attorney General. 28 C.F.R. ¶ 0.6.

thorization signed by Will Wilson, Assistant Attorney General, Criminal Division, was a sufficient authorization because of the provisions of 28 United States Code 510 authorizing the Attorney General to delegate to any employee any function of the Attorney General and further because on November 4, 1968 the then Attorney General had delegated to the Assistant Attorney General in charge of the Criminal Division the authority to exercise the power vested in the Attorney General by Section 2514 of Title 18 of the United States Code to approve the application by a United States Attorney to a Federal court for an Order compelling testimony, said regulation being published in the Federal Register, Vol. 33, No. 222, Thursday, November 14, 1968, page 16564.

This case further differs from those cases pending in the various district courts of this country in which the same objection has been raised, of which this court has knowledge. In United States v. Sklaraff, Crim. No. 26355, Northern Dist. of Ga.,[2] there appeared a memorandum from John N. Mitchell, the Attorney General, to Will Wilson, Assistant Attorney General, reciting Wilson's recommendation that authorization be given for application to the court and specially designating Wilson to authorize the specific application. This memorandum bore the written initials of Attorney General Mitchell. In that case I see no question of the special designation because the Attorney General himself reviewed and approved the application. The Attorney General was himself cognizant of the fact and no question of delegation of authority remained. He had performed the function prescribed by the Act, his direction to the Assistant Attorney General is mandatory and the Assistant exercised no discretion. It appears to be of no weight in that case that the name of Will Wilson was also

signed by Deputy Assistant Attorney General Petersen, pursuant to the authorization given by Assistant Attorney General Wilson.

In United States v. Green, 71–376 Cr. C.A., in the United States District Court for the Southern District of Florida, an affidavit from Will Wilson was made to the effect that he authorized Petersen to sign his name after the Attorney General had approved the application. If the Attorney General himself had approved the application no question of special designation of an Assistant Attorney General arises.

In United States v. Cantor, 328 F. Supp. 561 [E.D.Pa.1971], the opinion recites that at the hearing the Government offered two letters which were received in the regular course of business by the Philadelphia Strike Force, Organized Crime Division of the United States Department of Justice, one signed by John Mitchell, United States Attorney General, authorizing Mr. Will Wilson, Assistant United States Attorney General, to make the application for the wiretap in this case, and the other signed by Mr. Will Wilson, Assistant United States Attorney General, authorizing the Philadelphia Strike Force to make such application. The letters were received in evidence over defendant's objection because they were received in the regular course of business and based on these letters the court found that the application was authorized in conformity with the above section of the statute. The court found it entirely unnecessary and inappropriate to require at such a hearing direct oral testimony from these two officers that the application was authorized.

In United States v. John J. LaGorga et al., D.C., 336 F.Supp. 190, the sufficiency of the Attorney General's authorization was also raised. In that case it again appeared that the letter authorizing the request of the court for wiretap

---

2. An unreported decision of Judge Edenfield, dated Sept. 30, 1970 and referred to in a companion case, United States v. Sklaroff, 323 F.Supp. 296, 303 [S.D. Fla., 1971]. We have examined a photo-copy of the memorandum bearing the handwritten initials of Attorney General Mitchell which was filed in that case by the Government.

and bearing the signature of Will Wilson, Assistant Attorney General, was in fact prepared and signed by the then Deputy Assistant Attorney General Henry E. Petersen, but included among the exhibits to the application were memoranda initialed by Attorney General Mitchell personally wherein authorization to submit an application is given. Judge Weis there held that these memoranda satisfy the requirements of the statute and the question of who signed Will Wilson's name therefor becomes immaterial.

In the present case we have, therefore, the situation where there is no evidence that the Attorney General himself reviewed the recommendation and gave personal approval himself or specially designated any Assistant Attorney General to do so. The Government rests entirely upon the authority of the Executive Assistant to the Attorney General to act for the Attorney General either in authorizing the application or in specially designating an Assistant Attorney General to do so in this particular case. We feel that without these elements it is immaterial whether or not the signature of Will Wilson was placed on the authorization by himself or by a Deputy Assistant Attorney General in his office under his direction.

The legislative history of the provision of Section 2516 demonstrates an intention on the part of Congress that the use of wiretapping or electronic surveillance techniques should be carefully circumscribed and strictly controlled. United States Code Congressional and Administrative New, 90th Congress, 2nd Session, 1968, Volume 2, p. 2112, Senate Report No. 1097, Omnibus Crime Control and Safe Streets Act of 1968:

"Section 2516 of the new chapter authorizes the interception of particular wire or oral communication under court order pursuant to the authorization of the appropriate Federal, State, or local prosecuting officer."

"Paragraph (1) provides that the Attorney General, or any Assistant Attorney General of the Department of Justice specifically designated by him, may authorize an application for an order authorizing the interception of wire or oral communications. This provision centralizes in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques. Centralization will avoid the possibility that divergent practices might develop. Should abuses occur, the lines of responsibility lead to an identifiable person. This provision in itself should go a long way toward guaranteeing that no abuses will happen." (p. 2185)

\*   \*   \*   \*   \*   \*

"Title III of the bill would authorize carefully circumscribed and strictly controlled electronic surveillance (eavesdropping and wiretapping) by duly authorized law enforcement officials under a Court order procedure for the purpose of investigating specified crimes involving national security and serious offenses." (Individual Views of Senator Scott, p. 2264).

\*   \*   \*   \*   \*   \*

Title III. History of the Legislation. "S. 2050, on the other hand, finds its origin in the proposal which the President's Commission on Law Enforcement and Administration of Justice had before it when it made its recommendation that 'legislation should be enacted granting carefully circumscribed authority for electronic surveillance to law enforcement officers . . . .'." (Individual Views Messrs. Dirksen, Hruska, Scott and Thurmond on Title I, II and III, p. 2273).

\*   \*   \*   \*   \*   \*

Further in support of our determination of Congressional intent we note the provision of Section 2518(1) which requires that:

"Each application for an order authorizing or approving the interception or a wire or oral communication shall be made in writing upon oath or affirma-

tion to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

(a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application; "

The application filed at Miscellaneous No. 5038 in this case on August 26, 1970, upon which Judge Gourley issued the Order, recites that:

"(2) Pursuant to the powers conferred on him by Section 2516 of Title 18, United States Code, the Attorney General of the United States, the Honorable John N. Mitchell, has specially designated in this proceeding the Assistant Attorney General for the Criminal Division of the Department of Justice, the Honorable Will Wilson, to authorize affiant to make this application. A copy of the letter of authorization signed by the Assistant Attorney General is attached to this application as Exhibit A."

The evidence produced in response to defendants' Motion to Compel Admissions reveals that the Attorney General of the United States, John N. Mitchell, neither authorized this application nor specially designated any Assistant Attorney General to make the application.

The Government argues that although it did not strictly follow all the technical requirements of Section 2516(1) its actions show compliance with the legislative intent of the statute and that its procedures meet all the requirements of Berger v. New York, 388 U.S. 41, 87 S. Ct. 1873, 18 L.Ed.2d 1040 [1967] the acknowledged fountainhead of the wiretap provisions of Title III of the 1968 Act. It is clear that "Congress in passing the Act considered carefully the decisions of Berger v. New York, 388 U.S. 41 [87 S. Ct. 1873, 18 L.Ed.2d 1040] [1967], Katz v. United States, 389 U.S. 347, [88 S.Ct. 507, 19 L.Ed.2d 576] [1967], and Osborn v. United States, 385 U.S. 323, [87 S.Ct. 429, 17 L.Ed.2d 394] [1966], and made

an intensive effort to comply with the standards which had been enunciated in these cases." United States v. Cox, 449 F.2d 679 [10th Cir., 1971]. See: Senate Report 1097, 2 United States Code Congressional and Administrative News, 90th Congress, pp. 2153, 2161, 2162.

Nevertheless, Congress in Title III of the 1968 Act enacted the first comprehensive federal legislation in the area of wiretapping and electronic surveillance. Basically it prohibits the interception and disclosure of wire or oral communications, but authorizes interception only in cases of investigations of particular crimes, and then only within certain strictly prescribed limits.

"If the officers have not complied with the strict requirements of the statute, the contents of the communication or evidence which stems from it can be suppressed and the person making the interception is subject both to criminal and civil liability. In sum, Title III sets up a system of strict judicial supervision which imposes tight limitations on the scope of the investigation." United States v. Cox 449 F.2d 679, 684 [10th Cir., 1971].

One of the concerns of Congress was the principle of identifiable personal responsibility. The application to this court stated that the Attorney General had specifically designated the Assistant Attorney General in charge of the Criminal Division to authorize the application. The letter of the Assistant Attorney General recites that he had been so designated by the Attorney General and that he therefore authorized the application to the court. Upon this documentary showing, the court authorized the wiretap interception. These are identifiable persons. And yet the evidence produced here shows that neither of these identifiable persons had any knowledge of the matter under consideration, or took any action with respect to it.

For reasons stated we have previously determined that the intent of Congress

was not fulfilled by having some other officer of the Department of Justice exercising the function of the Attorney General under the authority of 28 U.S.C. § 510. Even under Section 510 it would appear reasonable that the Attorney General delegate his authority in some formal fashion which creates a documentary record of the delegation, either of an *ad hoc* delegation in each individual case under Section 2516 as we have seen done in other cases of this type, or by a standing general order of delegation as illustrated by the standing order of the Attorney General for Section 2514 cases authorizing a grant of immunity published in the Federal Register of November 14, 1968. The Government has produced neither a specific written *ad hoc* delegation in this case or a standing general order covering Section 2516 cases.

That 28 United States Code 510 was not intended to cover the functions of the Attorney General imposed by 18 United States Code 2516 is not only clear from the highly specific language employed by Congress, but also is required by general principles of statutory construction.

" § 367. General and Specific Provisions.—It is an old and familiar principle, closely related to the rule that where an act contains special provisions they must be read as exceptions to a general provision in a separate earlier or subsequent act, that where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision." 50 Am.Jur., Statutes, Sec. 367, p. 371 (citations omitted).

■ The Government also contends that the statute provides criminal and civil damage sanctions for illegal wire interceptions and that, therefore, this court may exercise discretion in ordering suppression in view of the alternate remedies. However, these remedies are available to others than defendants, and the plain intent of the statute is that no part of the contents of intercepted communications may be received in evidence if the disclosure would be violation of the provisions of Title III [18 U.S.C. § 2515] and that if the communication was unlawfully intercepted, or if the order of authorization or approval was unlawful on its face, the evidence shall be suppressed. [18 U.S.C. § 2518(10) (a)].

We are convinced that the evidence obtained by interception of telephone communications in this case was obtained in violation of the provisions of Title III of the Act of 1968, [18 U.S.C. §§ 2510–2520].