The **UNITED STATES** of America,
Plaintiff,

v.

**Robert Elia IANNELLI et al., Defendants.**

**Crim. No. 71–062.**

United States District Court,
W. D. Pennsylvania.

Feb. 16, 1972.

Richard L. Thornburgh, U. S. Atty., and Kenneth A. Bravo, Terrance A. Norton, U. S. Dept. of Justice, Pittsburgh, Pa., for the United States.

James E. McLaughlin, Pittsburgh, Pa., for Robert E. and Delores Iannelli.

Richard H. Martin, Pittsburgh, Pa., for Steve Bruno.

Stanton D. Levenson, Pittsburgh, Pa., for Albert and Frances Cammarata, and Albert Diulus.

George H. Ross, Pittsburgh, Pa., for Anthony Cancilla.

Thomas A. Livingston, Pittsburgh, Pa., for Thos. Ciancutti.

William R. Caroselli, Pittsburgh, Pa., for Louise Faiella, William C. Fusaro, and Philip Scolieri.

Harry J. Gruener, Pittsburgh, Pa., for Nicholas Gobos.

James K. O'Malley, Pittsburgh, Pa., for Maurice Orlanski.

## OPINION

WEIS, District Judge.

This case presents an illustration of the many complexities involved in the legislation enacted by Congress in recent years in efforts to combat organized crime.

The defendants have been indicted for conspiracy and violations of various gambling statutes of the United States. Much of the evidence which the Government intends to produce consists of facts uncovered by the use of a court authorized wiretap on telephones at the Iannelli residence located in one of the suburbs of Pittsburgh, Pennsylvania.

An evidentiary hearing has been held and a transcript of the telephone conversations overheard, as well as a copy of the tape recording, have been furnished to defense counsel.

The defendants have filed a plethora of pretrial motions—they allege:

1. The statute authorizing wiretapping, 18 U.S.C. § 2510 et seq., is unconstitutional;

2. The request for the court order for intercepting telephone communications was not properly authorized;

3. There were illegal disclosures of the contents of intercepted telephone conversations;

4. The FBI utilized an unauthorized wiretap;

5. An order of utilization under 18 U.S.C. § 2517 was secured by misrepresentation;

6. The application for the interception order was tainted by a prior illegal tap;

7. That 18 U.S.C. § 1955, a gambling statute, is unconstitutional;

8. That searches of premises owned by various defendants were based upon inadequate cause;

9. That the conspiracy count represents duplication of the offenses outlawed by 18 U.S.C. § 1955 and, hence, should be dismissed;

10. That bills of particulars and discovery should be ordered.

1.

 The constitutionality of the wiretapping statute has already been passed upon by this court and nothing further need be said on that subject at this time. *See,* United States v. LaGorga, 336 F. Supp. 190 (W.D.Pa.1971). The same considerations, however, with respect to irrelevant calls prevail in this case as in the *LaGorga* matter and the same provisions will apply to prevent further dissemination of the irrelevant material contained in the phone conversations, that is, an order impounding the nonincriminatory interceptions to preserve privacy.

 Defendants Albert Cammarata, Frances Cammarata, Louise Faiella, Anthony Cancilla and Steve Bruno contend that the failure to serve an inventory upon them requires suppression of the evidence. However, we note that the statute [1] does not require that a notice be served upon each person whose calls have been intercepted. It is sufficient if an inventory is served upon the individual named in the application and such

[1]. 18 U.S.C. § 2518(8) (d).

other persons as the judge may determine in his discretion. *Cf.* ABA Standards on Electronic Surveillance, § 5.15.

The purpose of this particular provision is to prevent the Government from carrying on a continuing surveillance without alerting those who would be the subject of the interceptions. In all, inventories were sent to some twenty-one persons, including eight of the named defendants. This is adequate coverage to effect the result intended by the Act. In any event it seems likely that Bruno and the others became aware of the intercept in this case when their acquaintances were served.

### 2.

■ Defendants assert that the Government failed to secure the authorization required by 18 U.S.C. § 2516(1) in that the letter attached to the application purportedly signed by Will Wilson, an Assistant Attorney General, was in fact never read, signed, dictated or approved by him. However, the prosecution contends that a memorandum issued by the Attorney General, and initialed by him, constitutes sufficient authorization within the terms of the statute. A similar situation prevailed in the La-Gorga case where a like memorandum was held sufficient. We hold to the same effect in this case.[2]

This case is different from United States v. Cihal, 336 F.Supp. 261 (W.D. Pa.1972), where neither the Attorney General nor an Assistant Attorney General ever authorized the wiretap. In the *Cihal* case the only person who authorized the interception was the Executive Assistant to the Attorney General, a person not empowered by the terms of the Act to direct the use of wiretapping and consequently the court ordered suppression.

In United States v. Aquino, 338 F. Supp. 1080 (E.D.Mich.1972), the United States District Court for the Eastern District of Michigan sustained an order for an original wiretap but ordered suppression of the extension. The original interception was found to be within the law when a memorandum initialed by the Attorney General formed part of the request for application. The extension, however, did not contain such authorization and it appeared that again only the Executive Assistant to the Attorney General had passed on the application.

Similarly, in United States v. Robinson, (5th Cir. 1/12/72), 40 L.W. 2454, suppression was ordered when there was evidence that the Executive Assistant to the Attorney General alone had authorized the application.

This is not a *Cihal* or *Robinson* case; this is a situation similar to *LaGorga* and the original tap in *Aquino*. We therefore find adequate compliance with 18 U.S.C. § 2516(1).

### 3.

Defendants claim, further, that there was unauthorized disclosure of the material received in the tap, particularly to the Internal Revenue Service and to the news media.

In April or May of 1971, Special Agent Edward Zelik of the Intelligence Division of the Internal Revenue Service was permitted to listen to the tape recordings of the intercepts. He compiled estimates of wagers received by the Iannellis and turned this information over to Revenue Agent Stanley Giarrussi assigned to the Excise Tax Group.

Acting on the basis of the data given to Giarrussi, IRS made wagering tax assessments against the Iannellis and later liened all their property.

It appears that similar disclosures were made to the IRS with respect to some of the other defendants.

---

2. The deposition of Sol Lindenbaum, the Executive Assistant to the Attorney General was taken on January 14, 1972 pursuant to order of court. Mr. Lindenbaum confirmed that the initials on the memorandum of October 14, 1970 were those of the Attorney General and had been placed there by Mr. Mitchell.

No court order authorized by 18 U.S.C. § 2517(5) [3] was secured before this material was made available to the Excise Tax group.

The statute provides in § 2517(1) that wiretap information may be divulged to another investigative or law enforcement officer. Section 2510(7) defines "investigative or law enforcement officer" as one " . . . who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses."

■ The defense argues strenuously that these provisions do not authorize disclosure to personnel of the Internal Revenue Service. Without passing upon the merits of this contention at this time, we hold simply that even if such a violation occurred, it does not furnish a basis for suppression of evidence in this criminal prosecution. Section 2515 provides that the contents of interceptions may not be received in evidence if disclosure " . . . would be in violation of this chapter." Section 2518(10) (a) provides for a motion for suppression when (i) the communication was unlawfully intercepted, (ii) the order is insufficient on its face, or (iii) the interception was not made in conformity with the order. Subsequent illegal activity is not listed within these categories.

If it be assumed that the interception initially was lawful, then the use of the evidence in this criminal case would not be "in violation of this chapter."

We do not believe that it was the Congressional intent to avoid an interception *ab initio* if there were some unauthorized disclosure of the information at some later time after an original lawful acquisition of evidence for use in the criminal proceeding which was the basis for the court order in the first instance.

A ruling on the admissibility of evidence forming part of an unauthorized disclosure, if such were sought to be utilized in a tax collection suit, should of course be deferred until raised in that proceeding. It is pertinent also that Congress did provide for the recovery of civil damages for the disclosure, use, or procurement of communications in violation of this chapter. *See* § 2520.

The allegation of unlawful disclosure to the press, however, fails to find sufficient supporting evidence in the record. The Iannellis brought an action in this court on July 8, 1971, requesting that an injunction be entered against the Internal Revenue Service.[4] There were evidentiary hearings in connection with that case and rather detailed pleadings were filed, all of which made data from the wiretaps available to the press in open court. Such disclosure developed in the course of a public hearing does not violate the terms of the statute since it does permit testimony about intercepted communications in a Court of the United States.

■ There is nothing in the record to support the very serious charge that the Government furnished information from the wiretaps to the press other than that which became public during the course of hearings in this and related litigation. Since such alleged misconduct on the part of the prosecution would merit the strongest condemnation, the defend-

---

3. "When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable."

4. Iannelli v. Long, 329 F.Supp. 1241 (W.D. Pa.1971) ; Iannelli v. Long, D.C., 333 F. Supp. 407 (W.D.Pa.1971).

ants must produce evidence to support their position. They have not done so.

The motions to suppress based on claims of illegal disclosures are denied.

### 4.

■ During the evidentiary hearing on the motions to suppress, a Mrs. Mary Rennebeck testified that a man resembling FBI Agent Harold L. Williams and purporting to be a telephone repairman, visited the Iannelli home on May 29, 1969 and seemingly tested the operation of telephones there. The Iannellis claim that this episode in fact was the occasion for the attachment of an unauthorized and unreported tap on their phones.

We find that the witness' identification testimony was weak and unconvincing and choose instead to credit the direct and unequivocal denial by Agent Williams who said he was not in the Iannelli home at that or any other time under such circumstances. Furthermore, the defendants failed to produce any evidence at all that there had in fact been an illegal wiretap at the Iannelli residence.

### 5.

■ Resourceful counsel for the defendants also object to the order dated December 22, 1970, signed by Judge Herbert P. Sorg of this court which permits the use of the wiretap evidence as a basis for prosecution under 18 U.S.C. § 1955.

The original court order authorizing interceptions was based upon an application which alleged, in part, a violation of 18 U.S.C. § 1952 which proscribes the use of facilities in interstate commerce, to carry on gambling activities. Although Judge Wallace S. Gourley signed the order approving the wiretap on October 19, 1970, it appears that the preparation of the application had taken place in Pittsburgh some weeks before. Thereafter it was sent to Washington, D. C. and then was returned with a letter of approval from the Department of Justice dated October 14, 1970.

On October 15, 1970, the statute prohibiting certain illegal gambling businesses was signed into law and became codified as 18 U.S.C. § 1955.

The petition presented to Judge Sorg in December, 1970, recited the circumstances of the interception order signed by Judge Gourley in October and stated that communications had been overheard which indicated violations of 18 U.S.C. § 1955 as well as 18 U.S.C. § 1952. The petition went on to say:

"7. At the time of the application of October 19, 1970, agents of the Federal Bureau of Investigation, had no knowledge or indication that offenses other than the transmission of bets and betting information in violation of Title 18, United States Code, Sections 1952, 1084, and 371 were being planned by the use of telephones bearing numbers * * *."

The attorney who prepared the petition did so on the basis of information received from the agents of the FBI and not as a result of any personal knowledge. At the evidentiary hearing, it became apparent that Special Agent Thompson at the time of preparation of the application was aware of *facts* which would later come within the ambit of 18 U.S.C. § 1955. It is obvious that at that time he did not know when, and if, and in what form, the bill which later became 18 U.S.C. § 1955 would be signed into law. In other words, the facts of which Thompson was aware in early October were not *offenses* against the United States at that time.

With this background, we reject the defense contention that the statement in the application to Judge Sorg was a palpably false representation which should vitiate the order.

Perhaps the petition could have been more precise but we are convinced that a fair reading of the pleading belies the assertion of deliberate falsehood and the facts furnished ample justification for the order.

**6.**

Since the time of oral argument and filing of briefs in this case, another development has occurred which arguably could come within the terms of the doctrine which for want of better nomenclature has been given the hackneyed and "time-worn" metaphor of "fruit of the poisonous tree".

The affidavit in support of the application for interception, which was filed before Judge Gourley, included some detailed information about Robert Iannelli's gambling activities secured from confidential informants as well as from electronic surveillance of telephones owned by one Jack Frangis, one Andrew Marmo, and one William Cihal. Each of these wiretaps had been authorized by a separate court order.

The Frangis wiretap was sustained against the attack of illegality and unconstitutionality.[5] However, the tap on the phone of William Cihal has been held to be in violation of the statute.[6]

The fact that part of the data which was offered in support of the application was a product of an illegal electronic surveillance gives rise to the question of whether the affidavit of probable cause involved in this case is so tainted as to require suppression of the evidence. The *Cihal* case is presently on appeal but we prefer to determine this question as if the order of suppression in that case were final.

■ First, as to the matter of standing, we conclude that Robert Iannelli, whose voice was intercepted on the Cihal phone, would have standing to move for suppression. Title 18 U.S.C. § 2510 (11) defines "aggrieved person" as one who was a party to any intercepted wire or oral communication or a person against whom the interception was directed. *See also,* Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1968).

None of the other defendants is mentioned in the affidavit as having had any conversations with Cihal during the period of his intercept and therefore would not have standing to raise the issue of suppression of the Iannelli wiretap.

Having found, therefore, that one of the defendants has standing, we go forward to determine whether the affidavit for probable cause was so contaminated as to mandate suppression of the results of the intercept.

In the case of Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), Mr. Justice White wrote:

> "The doctrine that the 'fruits' of illegally obtained evidence cannot be used to convict the defendant is complex and elusive. There are many unsettled questions under it." (Page 230, 88 S.Ct. page 2014)

A review of the literature and case law on the doctrine leads one to the belief that Justice White's comment was, at the least, an understatement.

The "fruit" and the "poisonous tree" depend for nourishment upon the soil of the exclusionary rule. This "ground" rule itself, however, has been subjected to probing examination in recent years, sprouting speculation that the maxim's claimed beneficial results have failed to ripen into reality. *See* dissenting opinion of The Chief Justice in Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 411, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Oaks, Studying the Exclusionary Rule in Search and Seizure, 37 U.Chic.L.Rev. 665 (1970). The justification for the exclusionary rule rests on the questionable theory that it deters unlawful police conduct and on the premise that the loss of otherwise valid evidence is not too high a price to pay when the Government relies on its own illegal conduct for successful prosecutions.

In Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319 (1920) in speaking of an illegal seizure, Mr. Justice Holmes said:

> "The essence of a provision forbidding the acquisition of evidence in a cer-

---

5. United States v. LaGorga, supra.

6. Ante, p. 174.

tain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." (Page 392, 40 S.Ct. page 183) That Justice Holmes recognized that this was not to be an all inclusive statement is evident from the following sentence where he said:

"Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed." (Page 392, 40 S.Ct. page 183)

In understanding the rationale of this case, also, it is essential to read the preceding portion of the opinion where the court said:

"The Government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its right to avail itself of the knowledge obtained by *that means which otherwise it would not have had."* (emphasis supplied (Page 391, 40 S.Ct. page 182)

In discussing the "independent source" referred to in *Silverthorne,* the Court in Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, said:

"In practice this generalized statement may conceal concrete complexities. Sophisticated argument may prove a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint. A sensible way of dealing with such a situation—fair to the intendment of § 605, but fair also to the purposes of the criminal law—ought to be within the reach of experienced trial judges."

The leading case of Wong Sun v. United States, 371 U.S. 471, 487, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1962) in explaining the doctrine reads:

"We need not hold that all evidence be 'fruit of the poisonous tree' simply be-cause it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

Alderman v. United States, supra, came to the Supreme Court in 1968. In discussing the question of standing to attack an illegal wiretap, the Court made the following comment by way of illustration:

"If the police make an unwarranted search of a house and seize tangible property belonging to third parties— even a transcript of a third party conversation—the homeowner may object to its use against him, not because he had any interest in the seized items as 'effects' protected by the Fourth Amendment, but because they were the fruits of an unauthorized search of his house, which is itself expressly protected by the Fourth Amendment. Nothing seen or found on the premises may legally form the basis for an arrest or search warrant or for testimony at the homeowner's trial, since the prosecution would be using the fruits of a Fourth Amendment violation." (394 U.S. page 176, 89 S.Ct. page 968)

This language is quite broad and might seem to require suppression in the case at bar. However, we think it must be read in the light of the preceding cases, that is, *Silverthorne, Nardone,* and *Wong Sun,* because *Alderman* does not purport to expand the "exclusory-tainted evidence" rule.

Then Judge Burger in Harried v. United States, 128 U.S.App.D.C. 330, 389 F.2d 281, 286 (1967) said:

"From its inception, the 'fruit of the poisonous tree' doctrine has not applied where the information was also obtained from an 'independent' source."

In this Circuit we have the case of United States v. Sterling, 369 F.2d 799, 802 (3rd Cir. 1966), where the Court unequivocally said:

"Nevertheless, the law is quite clear that the inclusion of illegally obtained evidence does not vitiate a search warrant which is otherwise validly issued upon probable cause reflected in the affidavit and based upon proper sources."

In agreement is James v. United States, 135 U.S.App.D.C. 314, 418 F.2d 1150, 1152 (1969), decided after *Alderman*:

"If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admitted."

*Accord,* Howell v. Cupp, 427 F.2d 36 (9th Cir. 1970).

For some valuable commentary on the subject, *see* Fruit of the Poisonous Tree—A Plea For Relevant Criteria, 115 U. Pa.L.Rev. 1136 (1967); Maguire, How to Unpoison the Fruit—The Fourth Amendment and Exclusionary Rule, 55 J.Crim.L.C. & P.S., 307 (1964)

The American Law Institute in its tentative draft of a model pre-arraignment proposes as follows:

"(3) *Fruits of Prior Unlawful Search.* If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to a motion to suppress under subsection (1), and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes that such evidence would probably have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of this Code." Ali, Model Code of Pre-Arraignment Procedure, §§ SS 8.02 (2), (3), p. 24 (Tent.Draft No. 4, 1971).

■ To sum up, if the tainted evidence may be excised from the affidavit and that remaining still constitutes probable cause, then the results of the intercept order should not be suppressed.

■ We have reviewed the affidavit and conclude that ample probable cause is established by the information secured from confidential sources, from the Frangis wiretap, and from the Marmo wiretap. The references to the *Cihal* intercept do little more than amplify and may fairly be classified as cumulative.

■ An evidentiary hearing on the extent of the taint is not required since the affidavit clearly spells out the data which was secured from the *Cihal* tap and supplied to the Court. Therefore, a review of the complete transcript of the *Cihal* interception is not necessary because we are concerned with the report that was presented to the judge who signed the order, not with what might have been in the minds of the agents who applied for the intercept. In this Circuit, at least, it is the contents of the affidavit and not unrecorded and unsworn statements to the magistrate which control the determination of probable cause. *See* United States v. Sterling, supra.

One other point should be made. There is no doubt that the agent who prepared the affidavit and the attorney who drew up the application for the Iannelli tap felt that the *Cihal* interception had been legally secured by a valid court order. It was more than a year later before any question was raised about the authorization from the Attorney General in the *Cihal* case. To order the drastic sanction of exclusion here would be a blind application of the rule without respect for the purpose for which it was formulated.

The "unlawful" police conduct and the "deterrent effect" which would justify the withholding of relevant and credible evidence are questionable indeed in the factual setting of the case *sub judice*.

We conclude, therefore, that the evidence secured from the Iannelli interceptions should not be suppressed.

### 7.

The attack upon the constitutionality of 18 U.S.C. § 1955 is answered by the decision of the court for the Eastern District of Michigan in United States v. Aquina, supra. In sustaining the legislation, the court pointed out that the argument that Congress had overreached its authority under the commerce clause of the Constitution, Article I, § 8, Clause 3, had been rebuffed by the Supreme Court in Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). The Perez case was concerned with intrastate loan sharking activities which actually appear less likely to affect interstate commerce than the gambling activity involved in the case at bar.

■ Congress has determined that an illegal gambling business involving five or more persons and with gross revenue of $2,000 a day or more or which has been in operation for a period of more than thirty days represents activity by organized crime which should be subject to prohibition by the national government. While the Supreme Court has yet to pass upon this exercise of legislative power, its holding in the Perez case leads us to believe that the same reasoning must apply to the gambling statute as was applied to the loan sharking situation. We therefore hold that 18 U.S.C. § 1955 is constitutional.

### 8.

The motions to suppress evidence received as a result of the searches of homes of several of the defendants are based upon two main contentions; first, that no probable cause was shown and, second, that the documents received were testimonial in nature and that even if the requirements of the Fourth Amendment have been met, the Fifth Amendment has been violated.

Both the Government and the defendants concede that if the evidence received from the Iannelli wiretap complies with appropriate standards, then the affidavits for the search warrants would be adequate. Since we have already found that the wiretap did comply with statutory and constitutional requirements, probable cause did, in fact, exist for the issuance of search warrants.

■ In support of their motion to suppress on the theory that the material was testimonial in nature, the defendants cite Hill v. Philpott, 445 F.2d 144 (7th Cir. 1971), and United States v. Blank, 330 F.Supp. 783 (N.D. Ohio 1971). In the Philpott case, the Court of Appeals, with one judge dissenting, held that the Fifth Amendment was violated in a search of a physician's office which resulted in a seizure of several truckloads of ledgers, appointment books, receipt books, etc. in connection with a criminal prosecution for income tax evasion. In the Blank case, the search was for the records of a defendant involved in gambling. The Court suppressed the evidence citing the Philpott case as authority.

The Supreme Court in Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) made clear that it no longer would prohibit a search for that which previously had been considered as "mere evidence." In that case, however, it did footnote an observation that there might be some things which by their very nature could not be seized. Just what might fall in that category has caused some uncertainty and concern in the lower courts. Nevertheless, it appears that the net effect of the Hayden case was to broaden the scope of the type of material which could be the subject of a search rather than to narrow it.[7]

The seizure of gambling paraphernalia, including such things as numbers slips, diaries, lists of names, receipts, etc. has been sustained in a number of cases. See United States v. Hanon, 428 F.2d 101

---

7. See 18 U.S.C. § 3103a which embodies the holding of the Hayden decision.

(8th Cir. 1970), cert. denied 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122, and while the Fifth Amendment contention was not precisely raised in United States v. Sigal, 341 F.2d 837 (3rd Cir. 1965), cert. denied, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60, the Court of Appeals of this Circuit did allow seizure of records similar to those involved in the case at bar.

We conclude that the *Hayden* case would not invalidate searches for materials which had been previously approved by various courts. *See also,* United States v. Bennett, 409 F.2d 888 (2d Cir. 1969) cert. denied sub nom.; Jessup v. United States, 396 U.S. 852, 90 S.Ct. 117, 24 L.Ed.2d 101; *Cf.* United States v. Scharfman, 448 F.2d 1352 (2d Cir. 1971). *See also,* United States v. Main, 312 F.Supp. 736 (D.C.Del.1970).

The rationale of the *Blank* case is that the records speak against the defendant just as clearly as if he were on the witness stand testifying. However, it is quite clear that there is a distinction between the situation where a person is forced to testify and incriminate himself and the circumstance where records which the defendant prepared at an earlier time under no duress or coercion are used as evidence against him. The Supreme Court in the cases of United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) and Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), permitted the introduction into evidence of recordings of statements made to a third party by a defendant under the belief that his confidence would not be violated. In both instances it developed that the third party was a Government agent or informer.

It is not difficult to appreciate the similarity between voluntarily maintaining records in the operation of an illegal business or criminal activity in the expectation that they would not be divulged and making incriminating statements to a third party under the same

mistaken impression. In neither case is the element of compulsion present and both represent what has been termed as being within an assumption of risk.[8] This type of documentary evidence is not of a purely personal and private nature.

The motions to suppress as to the material seized at the defendants' homes are denied.

### 9.

Count 1 of the indictment charges the defendants with conspiracy to mail paraphernalia to be used in bookmaking in violation of 18 U.S.C. § 1302, to carry on unlawful gambling activity in violation of the laws of Pennsylvania, a violation of § 1952, and to conduct, finance, and own an illegal gambling business in violation of § 1955. The second count charges the defendants with " . . . did knowingly and wilfully conduct, finance, manage, supervise, direct, and own an illegal gambling business, such business having a gross revenue of $2,000 or more on one or more single days, involving five or more persons in its conduct, financing, management, supervision, direction and ownership . . "

Defendants contend that there is duplicity between the conspiracy count and Count 2 and cite the case of United States v. Greenberg, 334 F.Supp. 1092 (N.D. Ohio 1971), where it was held that a conspiracy to violate § 1955 was dupicitous of a count of an infraction of § 1955.

It is basic that the commission of a substantive offense and a conspiracy to commit such offense are separate and distinct. But here the defendants invoke Wharton's rule [9] which simply stated provides that when the actions of two or more people are necessary to the commission of a certain crime, then that offense may not be indicted as a conspiracy. This exception applies only when the wrongdoing actually is committed and the general principle of separate offenses would be ap-

8. *See* dissenting opinion of Mr. Justice Brennan in *Lopez,* supra.

9. Wharton, 2 Criminal Law § 1339.

plicable if the underlying crime were not perpetrated.

 There are some points of distinction between this case and the *Greenberg* litigation. Here, the conspiracy charge takes into account not only § 1955 but also § 1952. And it would serve little purpose, therefore, to dismiss only part of the count at this stage of the proceeding when we are not certain what facts might be proved at trial with respect to § 1955. Under these circumstances, it would appear that no ruling should be made at this particular time on the objection raised by defendants but that the matter should be reserved for determination at the conclusion of the prosecution's case. This contention, therefore, of the defendants is denied without prejudice to renew it during the trial.

### 10.

Extensive motions have been filed by all defendants for bills of particulars. The following requests will be granted:

1. The Government shall indicate the day or days on which the illegal gambling business had a gross revenue of $2,000 or more which it intends to prove at the time of trial.

2. The Government shall indicate as to each of the named defendants, the capacity or capacities in which he is alleged to have participated in the illegal gambling business which is a violation of § 1955, that is, whether he conducted, managed, financed, supervised, directed or owned a portion of the business.

3. The Government will furnish a list of all overt acts which it intends to prove at the trial in addition to those listed in the indictments.

4. The Government shall list the names of co-conspirators not named in the indictment who have become known to the Government since the time of the indictment.

Numerous requests for items of discovery have been submitted and it should be noted that more than the usual amount of information has already been furnished to the defendants via the transcripts of the intercepted telephone calls. The United States has also permitted defense counsel to examine all of the material that was seized by virtue of the search warrants.

To the extent to which it has not already been performed, the Government shall:

1. Make available to defense counsel at time of trial the criminal record of each witness it intends to call.

2. Exculpatory material not heretofore disclosed to defendants' counsel shall be produced at pretrial. This material shall include, but not be limited to, names and addresses of witnesses potentially favorable to the defense and presently known to the Government.

All other requests for bill of particulars and discovery are denied.