**UNITED STATES of America**

v.

**John J. LaGORGA et al.**

**No. 71-017 Crim.**

United States District Court,
W. D. Pennsylvania.

Dec. 28, 1971.

Richard L. Thornburgh, U. S. Atty., Samuel J. Orr, III, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

James K. O'Malley, Pittsburgh, Pa., for LaGorga and Frangis.

David O'Hanesian, Pittsburgh, Pa., for Zemarel.

Samuel J. Reich, Pittsburgh, Pa., for Menas.

Stanley Greenfield, Pittsburgh, Pa., for Ager.

Harold Gondelman, Pittsburgh, Pa., for Berent.

## OPINION

WEIS, District Judge.

All the defendants have been indicted for various gambling activities alleged to be in violation of 18 U.S.C. §§ 2, 371, 1084, 1952. They have filed Motions to Suppress Evidence consisting of intercepted telephone messages secured by the Federal Bureau of Investigation in accordance with Orders of Court issued pursuant to 18 U.S.C. § 2510 et seq.

The attack upon the wiretap evidence is based upon the following contentions:

1. The statute is unconstitutional;

2. The statute was not followed because:

 a) There was no showing of probable cause to justify the issuance of the Order;

 b) The Government failed to file written reports with the authorizing judge within the 5 day interval set out in the Order;

 c) The Government failed to file an inventory within the prescribed time, not having complied with the requirement until some 9 days after the expiration date on one intercept Order;

 d) Letters bearing the signature of Will Wilson, an Assistant Attorney General, authorizing the applications for Court Orders were in fact signed by someone else, not in the category of those authorized by § 2516(1);[1]

---

1. "The Attorney General, or any Assistant Attorney General, specially designated by the Attorney General, may authorize an application to a Federal Judge * * * for * * * an Order authorizing or approving the interception of wire communications * * *."

3. There was a violation of the Court Order in:

 a) The interception of certain specific conversations under circumstances not authorized by the Order;

 b) A failure on the part of the Government agents to minimize the interception of non-relevant communications.

## CONSTITUTIONALITY

Counsel for the defendants argue vigorously that the wiretapping provisions of the Omnibus Crime Control Act of 1968 are unconstitutional. We note, however, that the Supreme Court of the United States in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 indicated that wiretapping under certain circumstances could be constitutionally permissible. Congress specifically considered these two cases in enacting the applicable statute in 1968. *See* 2 U.S.Cong. & Adm.News 1968, p. 2112.

Many of the arguments defendants press with respect to unconstitutionality of wiretapping generally are really concerned more with the policy and the undesirability of such a practice. There is no question that there was and is strong opposition to the very idea of the invasion of privacy necessarily involved with wiretapping.[2] On the other hand, those who are in favor of the practice, while recognizing the disadvantages, rely upon the necessity for electronic surveillance as a weapon in the struggle against organized crime.[3] It would not be appropriate to set out the arguments pro and con, it being sufficient to note that this, in reality, is a controversy which attracted the attention of Congress for many years, was thoroughly explored by that body, and was a subject of numerous hearings, compilation of data and testimony of experts on both sides.

In determining the necessity of the legislation, Congress found that "Organized criminals make extensive use of wire and oral communication in their criminal activities. The interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice." 82 Stat., p. 211, § 801(c), 18 U.S.C.A. § 801(c).

While there was not unanimity among the members of Congress and the wire interception provisions of the Omnibus Crime Control Act were passed only over bitter dissent, nevertheless for this Court the debate has ended and the statute has become the law of the land.

■ In view of the history of this legislation and its reliance upon the Supreme Court guideposts, we feel its constitutionality has been prima facie established. The only appellate decision on the point to this time is United States v. Cox, 449 F.2d 679 (10th Cir. 1971), which upheld the validity of the Act. A number of District Courts have come to this same conclusion and none has ruled adversely. We see no utility to set out at length here what would be repetitious of the opinions in United States v. Escandar, 319 F.Supp. 295 (S.D.Fla.1970), United States v. Sklaroff, supra, United States v. Cantor, 328 F.Supp. 561 (E.D. Pa.1971), United States v. Scott, 331 F.Supp. 233 (D.C.D.C.1971), United States v. Donlon, 331 F.Supp. 979 (D.C. Del.1971), United States v. Perillo, 914

---

2. The protection of privacy guaranteed to the people in their persons, houses, papers and effects by the Fourth Amendment is not absolute as so often seems to be implied in heated debate on this point. That privacy can be breached by a search warrant under conditions set out in the amendment. Factually, the wiretapping permitted by the Omnibus Crime Control Act is severely limited and the Act actually prohibits far more wiretapping and interception than it permits.

3. For a list of responsible organizations which have approved court authorized interceptions with strict safeguards to prevent abuse, *see* United States v. Sklaroff, 323 F.Supp. 296, 304 (S.D. Fla.1971).

F.Supp. 333 (D.C.Del.1971). We join the courts which have rejected the attack of unconstitutionality.

On March 8, 1970 Bruce Burns, a special attorney of the Justice Department, filed an application for an Order authorizing interception of wire communications, accompanied by an extensive affidavit of Special Agent Thomas G. Forsythe of the Federal Bureau of Investigation. Judge Herbert P. Sorg of this Court, on finding that probable cause had been shown, issued an Order authorizing interceptions of telephone calls at the home of defendant Jack Frangis and required that a report was to be provided the Court on the fifth and tenth day thereafter advising what progress had been made. The authorization was to be in effect for a maximum time of fifteen days or until communications were obtained which revealed the manner in which:

> "Jack Frangis and others as yet unknown participate in the illegal use of interstate telephone facilities for the transmission of bets and betting information and in aid of a racketeering enterprise (gambling) and which revealed the identities of his confederates, their places of operation, and the nature of the conspiracy involved therein . . ."

Monitoring ceased at the end of the fifteen day period but on May 19, 1970 another Order was signed by Judge Wallace S. Gourley authorizing further interceptions, not only those over the two telephones at the Frangis home, but also those of a Francis A. Zemarel and a partial surveillance of phone conversations at the Health Club at the Quality Court East Motel, East McKeesport, Pennsylvania. Authorization to intercept at the latter location was limited to situations when either Jack Frangis or Francis A. Zemarel was present in the motel and was one of the parties to a telephone conversation. Again, progress reports were required on the fifth

and tenth day following the date of the Order.

Both Court Orders required that the surveillance "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under [Chapter 119 of Title 18 of the United States Code]. . ." [4]

Following indictments and arraignments, defendants filed a number of motions, including those requesting suppression.

An evidentiary hearing on the latter motions was held in this Court after counsel for the defendants had been given an opportunity to review the tapes and transcripts of the intercepted communications.

## PROBABLE CAUSE

■ The affidavit accompanying the application for the interception on both occasions set out in great detail the background of gambling operations, the history of the participation of Frangis and Zemarel in such enterprises over a period of many years, their associations with out of town gamblers, the necessity for data on the odds for bets on various athletic events, accounts of the activities of the defendants from a number of informants who were admitted gamblers, and results of current surveillances by the Federal Bureau of Investigation.

We think that the application and accompanying affidavits fully justified the issuing judges in finding that there was probable cause to believe that violations of Federal law were occurring. Similar affidavits passed judicial scrutiny in United States v. Cantor, supra, and United States v. Perillo, supra. The offenses were among those enumerated in the statute. See 18 U.S.C. § 2516(1) (c), (g).

## REPORTS NOT IN WRITING

The wiretapping statute § 2518(6) reads:

> "Whenever an order authorizing interception is entered pursuant to this

---

1. *See* 18 U.S.C. § 2518(5).

chapter, the order *may* require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require." [Emphasis supplied.]

■ It developed at the hearing that no written reports had been submitted to either Judges Sorg or Gourley but that on the dates set, Bruce A. Burns, the special attorney assigned to the case, had orally advised the two judges that the objectives had not yet been achieved. The attorney did not enumerate the specific number of calls intercepted in any report to the two judges. Clearly, the statute does not insist that these reports be in writing nor by its terms does it specifically require any reports at all. The matter is one for the discretion of the issuing judge and we therefore find no error in the use of oral reports rather than those in writing. While the defendants point out that the guidelines prepared by the Justice Department speak of written reports, such a requirement does not have binding force as law. It would seem, however, in light of the objections raised in this case to the use of oral reports that it would be better practice in the future to have communications submitted in writing as departmental policy apparently now urges.

### DELAY IN FILING INVENTORY

With respect to the complaint that one of the inventories was not served until nine days after the specified date, again we find no prejudicial conduct of such dimension as to require us to suppress the evidence.

On August 24, 1970 Judge Gourley allowed an extension of 90 days within which to file the inventory with respect to the interceptions under the Order of May 19, 1970.[5] On November 24, 1970 another period of 90 days was granted because the investigation was continuing

and disclosure of the wiretaps would have been damaging. On December 23, 1970 an Order was entered requiring that a copy of the inventory be served upon certain named individuals and the record shows that this was accomplished by certified mail on December 24, 1970, and within the time allowed.

With respect to the interception of March 8, 1970, a 90 day extension was granted on June 18, 1970; a second one on September 15, 1970; and an Order of December 23, 1970 required that the inventory be served. This was done by registered mail on December 24, 1970, some nine days after the date required by the extension of September 15, 1970.

■ It is apparent that there was some confusion regarding the due date of the various inventories. There is no suggestion that an Order requesting a further delay to December 23, 1970 with respect to the March 8 interception would have been denied. No prejudice has been shown by any of the parties to the delay of a few days in issuing the notice to those concerned. This is not a situation as in United States v. Eastman, 326 F.Supp. 1038 (M.D.Pa.1971) where a suppression order was entered because there had been a complete and deliberate failure to file any inventory.

The purpose of the notice is obviously to prevent Government abuse and continuing secrecy on the use of wiretaps. In this case, the Court approved the extensions requested upon valid grounds and in due course the inventories were served. The purpose of the requirement, therefore, has been met and to suppress the evidence on the basis of a clerical oversight having no prejudicial effect would be to unnecessarily undermine and subvert the legislation.

### LETTER OF AUTHORIZATION

■ The defendants also complain that the letter from the Justice Department authorizing the request for a wiretap and bearing the signature of Will Wilson, an Assistant Attorney General, was in fact prepared and signed by a

5. 18 U.S.C. § 2518(8) (d).

then Deputy Assistant Attorney General, Henry E. Peterson. The Wilson letter was one of the exhibits to the applications for Orders presented to Judges Gourley and Sorg.

Since 18 U.S.C. § 2516 speaks only of the "Attorney General or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge * * *", the defendants assert that the evidence should be suppressed because of failure to comply with the statute. We do not find it necessary to reach that issue in this case, however, because included among the exhibits to the applications were memoranda initialed by the Attorney General personally wherein authorization to submit an application is extended. We hold that these memoranda do satisfy the requirements of the statute and the question of who signed Will Wilson's name therefore becomes immaterial. *Accord,* United States v. Cantor, supra.

## VIOLATION OF THE COURT ORDER AS TO CERTAIN CONVERSATIONS

On May 21, 1970, while in the Health Club, defendant LaGorga had a telephone conversation with one Bemerentano. On May 27, 1970 at 4:25 P.M. there was another conversation at the same location between "Johnny" and a male voice. Neither of these parties has been identified as either Frangis or Zemarel.

 The Order issued by Judge Gourley was quite specific in that no conversation at that location, which of course was a public one, was to be monitored unless Frangis or Zemarel was a participant. Since the two calls mentioned involved neither Zemarel or Frangis, these two interceptions were therefore directly in violation of the Court Order and must be suppressed.

## FAILURE TO MINIMIZE INTERCEPTIONS

We are much concerned about the large volume of innocent, irrelevant, and private conversations intercepted in the course of this electronic surveillance. Those in Congress who dissented to the use of wiretapping pointed out that this very type of situation would occur, that a surveillance into activities such as interstate gambling and other types of conspiracies would necessarily include monitoring of conversations over a sustained period of time. It is not one specific conversation with one individual which is the object of such a wiretap but a series of communications with many individuals, many of them unknown to the monitoring agent at the time the investigation begins.

Mr. Burns testified that he instructed all of the agents who were assigned to the monitoring duties to turn off the interception devices immediately if a privileged conversation was taking place. He became aware that conversations not connected with gambling were also being overheard and thereupon the agents were instructed to cut off on conversations that were not pertinent where it was possible to do so.

Mr. Burns testified that the practice was that if the agents could make a determination that a particular conversation was of no concern to the Government, the monitoring would cease. He admitted, however, that the specifics of minimizing irrelevant communications did not arise until after the interceptions were underway. He said:

"I instructed the agents, where possible, to terminate calls that weren't relevant. However, there were problems and I left it to their discretion. I certainly understood that it wasn't possible to terminate some conversations because they didn't know whether the phone would be turned over to another individual in gambling life or a particular conversation, personal at one point, may involve gambling a moment later." [6]

In one instance the defendant Jack Frangis was out of the city for a period of some six days during the period of the

6. Tr. p. 172.

first interception. Nevertheless, during this period of time, the monitoring of the telephone calls at his home continued.

Although the agents were aware of Frangis' absence, they knew that or suspected that his visit to New York had some connection with the alleged gambling activities and thought that some calls might be placed to his home which would provide information on the purpose of the trip and identity of the defendant's confederates. Hindsight indicates that interception during this period apparently produced little of value and might well have been eliminated.

As was indicated in the evidentiary hearing, it is often impossible to determine that a particular telephone conversation would be irrelevant and harmless until it has been terminated. It is certainly not unusual for two individuals using the telephone to discuss social matters or items of general interest before getting to the precise point which is to be covered in the call. Similarly, when a call is made to a residence, the telephone is often answered by a young child who will turn it over to one of the adult members of the household at some point in the conversation. It is also rather common that a telephone conversation initially between two children will later develop into a discussion between adults.

That such problems would be encountered in surveillance was certainly not unknown to Congress which discussed the matter on many occasions. We cannot ignore the fact that in spite of this possibility, the Act was passed although it did incorporate a requirement that the Court Order minimize the interception of communications not otherwise subject to interception (18 U.S.C. § 2518(5)).

In the case at bar, the special attorney in charge did instruct the agents to terminate conversations when they felt in their discretion it would not lead to relevant evidence. The Court reviewed the transcript of all of the calls, a lengthy and tedious task, and finds that while the monitoring of many conversations was terminated, nevertheless there were many calls which it now clearly appears

should have been cut off at a much earlier time.

Our case is somewhat different from that of United States v. Scott, supra, where the agents admittedly made no attempt at all to minimize the interception of irrelevant calls. While the Court ordered the evidence suppressed in that case, we feel that the factual situation here is distinguishable and requires a different result. We also entertain serious doubts that suppression of all the evidence is mandated as the decision in *Scott* seems to indicate. Rather, we choose to accept the interpretation of § 2518(10) (a) adopted by the Court in United States v. King, 355 F.Supp. 523 (S.D.Calif.1971), where it was held that suppression applies to the specific interception which is determined to be unlawful, rather than a blanket order which would affect all the evidence, including that obtained by procedures sanctioned by statute and Court Order.

It is all well and good to say, after the fact, that certain conversations were irrelevant and should have been terminated. However, the monitoring agents are not gifted with prescience and cannot be expected to know in advance what direction the conversation will take. It is also true that, during the early part of the surveillance, it was necessary for the agents to familiarize themselves with the voices of those who were working with the defendants.

From a practical standpoint, we see no possibility of effectively being able to distinguish in advance between all of the calls which should not be overheard and those which are clearly relevant. *See* United States v. Sklaroff, supra, and United States v. King, supra.

This is not to disparage the objections to loss of privacy which become very understandable indeed when one reads the irrelevant conversations which have been transcribed. Most of course were trivial, some involved discussions between people who have no connection at all with the case or the defendants' activities. None in this instance would really be anything

other than slightly embarrassing but the point is that they offer no help at all to the criminal prosecution and the continued use of the transcripts and tapes may well be offensive to those involved. We do not approve or condone interceptions of nonrelevant telephone calls and nothing in this Opinion should be taken as sanctioning the monitoring of purely personal conversations.

■ We are not inclined, however, to suppress all of the evidence simply because of the minimal loss of privacy of those who are not defendants and would in truth not benefit from suppression. It seems clear under the general law of search and seizure that if some of the items obtained satisfy the requirements of the law, the mere fact that other objects beyond the permissible ambit of the search must be suppressed, does not require that all of the evidence must be necessarily so treated. *See* United States v. Escandar, supra; United States v. King, supra; United States v. Langford, 303 F.Supp. 1387 (D.Minn.1969); United States v. Thweatt, 140 U.S.App. D.C. 120, 433 F.2d 1226, 1232, n. 7 (1970). See concurring opinion in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1968).

■ However, such annoyance as might be caused by the interception of calls of innocent persons in this case should not be permitted to continue any longer. We will suppress only the evidence pertaining to the irrelevant conversations and order that the transcripts and portions of the tape of those interceptions be impounded. Furthermore, an additional inventory shall be prepared by the Government and served upon all individuals not in the defendants' households whose irrelevant conversations were monitored.

We believe that in taking this action due respect will be accorded the Congressional intent to provide a specific remedy of civil damages in § 2520 to those whose communications may have been intercepted in violation of the law. If the aggrieved parties wish to file a suit for damages, then the alleged offending tapes may be released for use as evidence. We express no opinion, of course, on the merits of any such claim but simply hold at this point that complete suppression of all the interceptions, including those which would provide evidence against the defendants is not indicated and will not be ordered.

The other motions of the defendants to dismiss the indictment are denied. *See* United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966).