Edward O. Provenzano, J.
On October 5, 1971, Jack B. Lazarus, District Attorney of Monroe County, made application before a Monroe County Court Judge, for an eavesdropping order pursuant to CPL article 700 of the State of New York. Said application was approved and the order signed on October 5,1971. The order authorized designated police officers to overhear and record “ telephone conversations relating to bets and wagers placed by various and sundry unknown .persons with a male person only known as ‘ Sal ’, that being evidence of the commission of the crime or crimes aforesaid specified (Gambling offenses — Sections 225.05, 225.10, 225.15, 225.20 and 225,30 of the Penal Law of the State of New York and a conspiracy to commit any of said offenses as defined and prohibited in Article 105 of the Penal Law of the State of New York) and to secure replacing or laying off of bets by and between said persons and keeping of records, the amount of money wagered, and the supervision of persons involved in these activities over telephone number 436-5506 located at 16% Romeyn Street, City of Rochester, County of Monroe, State of New York.”
Telephone conversations were intercepted beginning October 5, 1971 and ending November 3, 1971. On November 4, 1971 a detective of the Rochester Police Department applied to the Judge who had signed the said eavesdropping warrant for a search warrant authorizing the search of the person of Chester Palozzi and premises located at 16% Romeyn Street. That same day said detective laid before said Judge informations accusing the defendant, Palozzi, of the offenses of promoting gambling in the first degree, and also of promoting gambling in the second degree. Based on these accusatory instruments, warrants of arrest for the defendant were issued by said Judge. The defendant was arrested on November 5, 1971, pursuant to the above-mentioned warrants.
Following the taking of testimony at a preliminary hearing in the City Court of Rochester, the defendant’s case was bound over to the Monroe County Grand Jury. By Indictment No. 76, filed February 11, 1972, the defendant was indicted on three counts of promoting gambling in the first degree (Penal Law, § 225.10, subd. 1) and six counts of promoting gambling in the second degree (Penal Law, § 225.05).
On March 9, 1973 the defendant brought before this court a motion to suppress the intercepted conversations in accordance *776 with GPL article 710, attacking not only the eavesdropping warrant itself, but also the method of execution of the warrant.
To support the motion to suppress, the defendant has alleged a variety of grounds. At least two of the arguments urged by the defendant appear to this court to be determinative.
As recited above, the instant eavesdropping warrant directs the seizure of telephone conversations relating to bets and wagers placed by various persons “ with a male person only known as ‘ Sal ’ ’ ’. The defendant argues that the warrant authorized the police to intercept only conversations in which “ Sal ” was a participant. He contends that because his alleged conversations did not involve “ Sal ”, the interception of his statements, at least, is beyond the scope of the warrant’s authority and must be suppressed. This court finds the defendant’s argument cogent and persuasive and dispositive of the motion.
The conversations allegedly involving the defendant were intercepted while the defendant was inside tlie Romeyn Street premises and while he allegedly was speaking into the telephone numbered 436-5506. The defendant was therefore not an outside party calling to the subject telephone and/or to the person identified as ‘ ‘ Sal ’ ’. It is undisputed and conceded by the prosecution that “ Sal ” and the defendant, Chester Palozzi, are two separate and distinct individuals.
(The resolution of one question by the Court of Appeals of the State of New York has, it appears, now opened the door for the prosecution in this case to ask the question which logically follows the first. In People v. Gnozso d Zorn (31 N Y 2d 134) the. court decided that the conversations of an unnamed party may be used against that party as long as the unnamed party was conversing with the person named in the eavesdropping warrant. The question now. raised is whether the police have authority to intercept relevant conversations over the suspect telephone and involving two persons, neither of whom are the persons against whom the eavesdropping warrant is directed.
In Berger v. New York (388 U. S. 41), and Kats v. United States (389 U. S. 347), the United States Supreme Court stated that persons’ conversations are within the protection of the Fourth Amendment to the United States Constitution and cannot be seized by the Government without intervention and judgment of a Magistrate particularly describing the person and property, or conversations, to be seized. Both decisions and the requirements they imposed for a statute that could pass constitutional muster, became the model for our present wiretap law. *777 CPL 700.30 recites the particularity required by the Berger and Katz cases (supra).
Said section provides in part:
“ An eavesdropping warrant must contain: * * *
“ 2. The identity of the person, if known, whose communications are to be intercepted; and * * *
“4. A particular description of the type of communications sought to be intercepted ”.
In intercepting the conversations of the defendant, Palozzi, the police acted outside the scope of their authority which limited their seizure only to conversations to which “ Sal ” was a party. Furthermore, such interception violated the clear legislative mandate of subdivision 1 of CPL 700.35 which provides in part:
‘ ‘ Eavesdropping warrants; manner and time of execution.
“ 1. An eavesdropping warrant must be executed according to its terms ’ ’.
The District Attorney contends that the conversations of the defendant, Palozzi, cannot be suppressed in light of our Court of Appeals decision in the Gnozzo & Zorn cases (31 N Y 2d 134, supra). This reliance is miscast. In the Zorn case (supra), the police, while executing an eavesdropping warrant aimed and directed against one “ Slayka”, intercepted and seized a telephone call by Slayka over Slayka’s phone to the defendant, Zorn. In affirming the defendant Zorn’s conviction for gambling, which was predicated upon his conversation with Slayka, the court held that amendment of the Slayka warrant to include the conversation of Zorn was not necessary as a predicate to admissibility and use of the conversation against Zorn even though Zorn was not a person against whom the eavesdropping warrant was directed. Noteworthy, is the fact that the District Attorney in the instant case at no time applied for an order of amendment pursuant to subdivision 4 of CPL 700.65 to include the conversation of Palozzi in the eavesdropping warrant.
The court’s holding in the Zorn case (supra), however, can, in no wise be deemed to sanction the interception of the defendant Palozzi’s conversations. To the contrary, the language of the Zorn case (supra) points toward suppression of Palozzi’s conversation inasmuch as his conversation was not “ conversation sought” under the aegis of the eavesdropping warrant. “ Where the communication intercepted involves the crime specified in the warrant, the named suspect, and an unknown outside party, at least in this instance, the communication is “ sought ” and no amendment is required”. (People v. Gnozzo & Zorn, 31 N Y 2d 134, 143, supra-, emphasis added.)
*778 In the instant case, the eavesdropping warrant carefully limited its execution to seizing “Sal’s” conversations with unknown outside parties. All other conversations were excluded. The warrant did not authorize the seizure of Chester Palozzi’s conversations unless “ Sal ” was a party to such conversations.
Noteworthy is the fact that the court in Gnozzo & Zorn (supra) cited numerous Federal cases which have interpreted comparable Federal eavesdropping legislation (U. S. Code, tit. 18, § 2510; United States v. Cox, 449 F. 2d 679; United States v. Ianelli, 339 F. Supp. 171; United States v. LaGorga, 336 F. Supp. 190; United States v. King, 335 F. Supp. 523; United States v. Perillo, 333 F. Supp. 914; United States v. Shlaroff, 323 F. Supp. 296; United States v. Escandar, 319 F. Supp. 295).
In all of these cases the Federal courts permitted the use of conversations against outside parties not named in the warrant. In all these cases, however, as in Gnozzo & Zorn (supra) the conversations of the outside or second parties were with the very parties named in the warrants.
One of the cases cited in Gnozzo & Zorn (supra) is especially relevant because it demonstrates the distinction between the facts as presented in Gnozzo & Zorn (supra) and those disclosed in the instant ease. In United States v. LaGorga (supra) both types of fact situations are demonstrated together with the appropriate and distinct Ie_gal relief applicable to each set of facts. Relative to those facts demonstrating the interception of conversations of outside parties calling the persons against whom the warrants were executable, the rule is exactly the same as that announced by the court in Gnozzo & Zorn (supra) and suppression was denied. However, with reference to those facts in LaGorga (supra) where the Government agents intercepted a telephone conversation over the suspect telephone which involved two parties, neither of whom was named as a target party in the eavesdropping warrant, the conversations were suppressed. The suppressed conversations in LaGorga (supra) arose out of the following facts: On May 21, 1970, while in a health club, defendant, LaGorga, had a telephone conversation with one, Berementano. On May 25, 1970, there was another conversation at the same location between a person identified as “ Johnny ” and a male voice. Neither of these parties was identified as either Frangís or Zemarel, the parties against whom the warrant, authorizing the telephone tap, was directed. In suppressing these two conversations, the court stated: “ The Order issued by Judge Gourley was quite specific in that no conversation at that location [i.e. the health club], which of *779 course was a public one, was to be monitored unless Frangís or Zemarel was a participant. Since the two calls mentioned involved neither Zemarel or Frangís, these two interceptions were therefore directly in violation of the Court Order and must be suppressed.” (United States v. LaGorga, 336 F. Supp. 190, 195, supra).
Ñor can the prosecution avail itself of the “ plain view ” doctrine to prevent suppression of the defendant, Palozzi’s conversations. The “plain view” doctrine is applicable to electronically “ seized” conversations. (United States v. Leta, 332 F. Supp. 1357; United States v. Sklaroff (323 F. Supp. 296, supra) ; United States v. Ecandar (319 F. Supp. 295, supra); United States v. Cox (449 F. 2d 679, supra.) The doctrine stands for the proposition that “ objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.” (Harris v. United States, 390 U. S. 234, 236.)
The scope of the “ plain view ” doctrine as enunciated in the Harris case (supra), was clearly limited by the Supreme Court when on June 21, 1971 it decided the case of Coolidge v. New Hampshire (403 U. S. 443). In Coolidge the court stated (p. 469) that an item in plain view may be legally seized only if the police “ inadvertent [ly] ” come upon the piece of evidence. The court noted that “ if the initial intrusion is bottomed upon a warrant which fails to mention a particular object, though the police know its location and intend to seize it, then there is a violation of the express constitutional requirement of “ ‘ Warrants * e * particularly describing * * # [the] things to be seized.’ ” (Coolidge v. New Hampshire, p. 471).
The District Attorney admitted during oral argument of the motion that, at the time the instant eavesdropping warrant was applied for, the police suspected and therefore intended to seize the conversations of the defendant, Palozzi. Thus, the District Attorney’s reliance upon the “plain view” doctrine is foreclosed.
Defendant’s second and equally persuasive argument questions the necessity of, and the order for, the maximum period of electronic surveillance authorized by statute.
Defendant argues that the subject order of approval, which in pertinent part reads: ‘ ‘ Ordered, that such eavesdropping shall not cease of automatically terminate after one or more of the described conversations have been overheard, but shall cease at the close of 30 calendar days from the date of issuance of this warrant ”, violates the Fourth Amendment to the United States *780 Constitution as interpreted in Berger v. United States (388 U. S. 41, supra), Katz v. United States (389 U. S. 347, supra) as well as the provisions of subdivision 2 of CPL 700.10 and the United ■States Code (tit. 18, § 2518, subd. [5]). The above authorities provide that an eavesdropping warrant may not authorize or approve the interception of wire communications for a period longer than is necessary to achieve the-objective of the authorization. To do so constitutes the warrant a general warrant, violative of the above authorities.
Authorizations or orders of approval substantially similar to the subject order of approval were issued in gambling and conspiracy investigations and held to be invalid in two unreported decisions of the Federal District Court. (United States v. Joseph (W. D. N. Y., Curtin, J., 1972) and United States v. Todaro (W. D. N. Y., Henderson, Ch. J., 1971). (See, also, People v. Pieri, 69 Misc 2d 1085, 1086 [1972].)
On the point of limitation of surveillance, comment is suggested on the case of People v. Zorn (supra). This court is not unmindful that the Court of Appeals in Zorn, a gambling case, approved a 30-day eavesdropping warrant. The Zorn case is distinguishable from the case at bar in at least two respects. First, the extent and nature of the activity under surveillance. The application for the Palozzi warrant established a $35 per day activity; the application for the Zorn warrant established a multi-thousand dollar operation per week. Second, the termination of surveillance provisions of the warrants. In the case at bar the warrant contained no provision for the termination of the surveillance upon achievement of the objective of the authorization; in the Zorn case, the warrant provided, in pertinent part ‘ ‘ and its authorization shall continue until evidence of the aforementioned crime shall be obtained * * * but in no event shall such authorization continue beyond (30) days from its effective date
This court finds, that the interception of the defendant’s communication went beyond the scope -of the eavesdropping warrant ; that the lack of necessary limitations in the order violates the constitutional standards set out in the Berger and Katz (supra) decisions, and violates the United States Code (tit. 18, § 2518, subd. [5]) and subdivision 2 of CPL 700.10 and subdivision 7 of CPL 700.30 of the State of New York.
Accordingly, the motion to suppress being disposed of on the grounds discussed, the determination of the other points raised by counsel is unnecessary.
The motion to suppress is granted.