*129 OPINION OF THE COURT
Sol R. Dunkin, J.
The defendants move to controvert a search warrant issued by Judge Melvin Glass of the Criminal Court, Queens County, and to suppress evidence seized pursuant thereto on the ground that information contained in the application for the warrant and supporting affidavits was illegally obtained by New Jersey police.
Defendants concede that there was court-ordered electronic eavesdropping of a particular telephonic instrument in New Jersey. Defendants do not, at this time, seek to move against the eavesdropping warrant. Rather, the defendants argue that during the electronic interception of conversations on that particular instrument, the New Jersey authorities ascertained the identity of a phone number dialed from the wiretapped instrument. The defendants conclude, therefore, that the New Jersey police used a "pen register” or "in-progress trace” and submit to this court that since such a device was not specifically authorized in the eavesdropping warrant their use, therefore, was illegal and the fruits of such illegally obtained information must be suppressed.
A pen register is a device which intrudes into a telephonic system to monitor the electrical impulses caused by the telephone dial of the tapped instrument and interpolates them to ascertain the number dialed. An in-progress trace intrudes into the system to discover the number of the originating telephone facility on an incoming call.
The pertinent facts are that the New Jersey authorities suspecting certain persons of engaging in the illegal narcotics trade in their State applied for and presumably properly received from a Superior Court Justice an order directing the interception of the telephonic communications of these suspects. The court also directed that a copy of the order be sent to the appropriate communication carrier "solely for the purpose of obtaining technical information required for the proper execution of the order.”
Pursuant to the order, a wiretap was placed on the suspects’ telephonic instrument. Outgoing calls made by the New Jersey suspects to the New York defendants in the present case were monitored and allegedly contained incriminating conversations. As a result of what the defendants conclude must have been the use of a pen register, the phone number and *130 consequently the address of the present defendants was obtained. The authorities pursuing this lead went to the vicinity of the defendants’ home in Queens County and observed the defendants in conversation with the New Jersey suspects. The New York police were advised of these various developments, whereupon they presented this information to Judge Melvin Glass of the Queens Criminal Court and received a search warrant for the defendants’ premises. The warrant was executed and the search proved fruitful. A quantity of cocaine was seized.
The District Attorney’s contention, uncontradicted in any material way, is that neither a pen register nor any other similar device was utilized in this case. Rather, the District Attorney asserts that while recording the telephone conversations of the suspects in New Jersey, the authorities also recorded the act of dialing out from the wiretapped instrument. The recordings, therefore, contained the clicking sounds made when a person dialed out from the wiretapped instrument. Either a human being or a machine can then count the clicks on the tape and determine the number dialed. In this case, the District Attorney concedes that a machine was used for the essentially ministerial task of click counting.
Since the defendants do not challenge the issuance of the eavesdropping warrant, this court is compelled to conclude that the warrant was properly issued. This court must then turn to the essentially threshold issue of whether or not the act of dialing out from the wiretapped phone was properly recorded by the New Jersey authorities in the first instance. In deciding that point, this court must consider the issue of minimization. While the court does not have before it sufficient information to make a full-blown decision on whether or not the authorities complied with the requirements of minimization, nevertheless it can, and indeed must, apply certain basic principals of minimization.
The requirement of minimization is, in substance, a requirement that a good faith and a reasonable effort be made to keep the number of nonpertinent interceptions to a minimum (United States v Turner, 528 F2d 143; United States v Scott, 516 F2d 751; United States v Quintana, 508 F2d 867; United States v James, 494 F2d 1007, cert den 419 US 1020). This requirement is rooted in the concern that invasions of privacy should be limited to that which is necessary under the circumstances (Berger v New York, 388 US 41).
*131 Logic dictates that a relatively minor intrusion is necessary for the authorities to determine pertinency or lack of pertinency of a particular conversation (United States v Turner, 528 F2d 143, supra; United States v Armocida, 515 F2d 29; United States v Bynum, 485 F2d 490, vacated on other grounds 417 US 903; United States v Falcone, 364 F Supp 877, affd 505 F2d 478, cert den 420 US 955). Government authorities are not required to be clairvoyant to the extent of determining prior to the inception of an outgoing call whether or not that call is pertinent (United States v Bynum, supra; United States v La Goga, 336 F Supp 190).
It follows, therefore, that the intercepting authorities may monitor the initial portion of any conversation, determine its pertinency, and if not pertinent, cease the monitoring. It also follows that the authorities may, indeed must, tape record anything which they monitor. To hold otherwise would permit the far greater intrusion of permitting police agents to monitor without recording, and, thereby not preserving that which they listen to for review by the courts.
Since it is obvious that the act of dialing is at the beginning of any outgoing call, this court concludes that it was proper for the New Jersey authorities to monitor and tape record that act. The subsequent use by the authorities of the clicking sounds on the tape recordings of the New Jersey suspects’ telephone calls, is, therefore, not an independent intrusion into the telephonic system. Those clicking sounds could be interpreted by a human being listening to the tape at various speeds. The fact that the click counting operation may have been performed in this case by some mechanical device rather than by a person is not material.
The court finds, therefore, that the use of the tape recordings in this manner was proper and on that basis the defendants’ motion should be denied.
The court’s decision would not be different if the defendants’ contention that a pen register was used was accurate. The defendants concede that independent use of a pen register is not subject to either the New Jersey (New Jersey Wiretapping and Electronic Surveillance Control Act, NJSA, § 2A:156A-1 et seq.) or Federal wiretapping statutes (Title III of the Omnibus Crime Control and Safe Streets Act of 1968, US Code, tit 18, §§ 2510-2520). The reason for this exclusion is that pen registers are not intercepting devices as defined in the statutes (since they do not intercept aural communica *132 tions). Both statutes are only aimed at the unauthorized interception of substantive communications. The pen register only records the number being called and not the conversation itself. It follows, therefore, that the authorities may use a pen register without resorting to an eavesdropping warrant.
The defendants contend, however, that when pen registers are used in conjunction with court-ordered wiretapping they come within the purview of the statute and are controlled by the court’s eavesdropping warrant. The defendants argue that since the appropriate authorities did not request authorization for the use of a pen register and since the warrant does not expressly authorize it, the pen register is impliedly prohibited by the court (expressio unius est exclusio alterius).
The defendants also contend that the part of the court’s order directing that a copy of the order be sent to the telephone company in order to obtain technical information cannot be read to direct the telephone company to provide the technical assistance necessary for a pen register.
The court does not find the defendants’ arguments persuasive. Defendants concede on the one hand that a pen register when used alone is not a device subject to title III (US Code, tit 18, §§ 2510-2520) provisions (the New Jersey wiretap statute like New York’s derives directly from the fountainhead title III). On the other hand, the defendants assert that when such a device is used in conjunction with a court-ordered wiretap, both are subject to title III, reasoning that this is so because the pen register is the type of communication intercepting device that the statutes were aimed at. The source of this apparent inconsistency is, in the court’s opinion, traceable.
In United States v Caplan (255 F supp 805) upon which defendants rely, the court held that a pen register intercepts a communication subject to section 605 of title 47 of the United States Code. That statute did not define the type of communication, the interception of which is prohibited. In 1968, Congress passed Title III of the Omnibus Crime Control and Safe Streets Act. (US Code, tit 18, §§ 2510-2520.) At the same time, section 605 of title 47 of the United States Code was amended to proscribe the interception of radio communications. All interceptions of wire communications were put under the control of title III. However, title III defines the word "intercept” to mean the "aural acquisition of the contents of any wire or oral communication.” (US Code, tit 18, § 2510, subd *133 [4].) It is this definition that the courts in United States v New York Tel. Co. (434 US 159) and Michigan Bell Tel. Co. v United States (565 F2d 385) relied on to find that pen registers are not the type of device subject to title III (at least when used alone). Previous cases, therefore, which held pen registers to be the type of device prohibited by wiretapping laws are not relevant under title III and its progeny.
The court also notes that the technical assistance language generally found in eavesdropping warrants is in the court’s opinion only a device which compels the communications carrier to permit, and assist in, the execution of the warrant. The absence of such language does not go to the validity of the warrant itself, nor does it bar the execution of the warrant in the absence of a challenge from the carrier.
The defendants only remaining argument of any substance is that when a pen register is used in conjunction with a court-ordered wiretapping, it is subject to the rules of title III. (US Code, tit 18, §§ 2510-2520.) While the defendants have directed the court’s attention to a few cases which have so held, the court is not persuaded that such an interprtation of title III is correct. Assuming arguendo, however, that such an interpretation is valid, it still does not support defendants’ conclusions. Defense counsel, while citing United States v Lanza (341 F Supp 405, 422) for the above proposition, neglects to note the remaining portion of the very paragraph in which the above proposition was stated. That court found (supra, p 422) that: "[T]he [o]rders [authorizing the [interception of [w]ire Communications in this case are sufficient to permit the use of the pen register in conjunction with those interceptions.”
Thus, it seems that the same factors which led the Lanza court to conclude that when a pen register is used in conjunction with a wiretap, both are subject to title III, also led that court to conclude that no separate order is necessarily required for the use of the pen register.
This court’s conclusion based on the type of device utilized in the instant case was paralleled by the Third Circuit Court of Appeals in an opinion dealing with pen registers. In United States v Falcone (505 F2d 478, supra) the court reasoned that since the tape recorder, which is part of the wiretap, records the aural manifestation of the electrical impulse of the dialed number and when played at a slower speed can divulge the phone number dialed to an expert who listens to it, the use of *134 the pen register does not really do much to aid in the discovery of the dialed number. It only saves time. Thus, the pen register is not truly an independent intercepting device. The Falcone court in substance equates the effect of a pen register with the use of type of device utilized in this case which apparently mechanically translates the dial clicks to the number dialed from a previous tape recording of a telephone call.
It is this court’s opinion that even when used in conjunction with a court-ordered wiretap a pen register does not require separate authorization. The court finds, therefore, that even if defendants’ conclusion that a pen register was used in this case was accurate, the motion to controvert and suppress should be denied.
The defendants’ motion to controvert the warrant issued by Judge Melvin Glass and to suppress the evidence seized as a result of that warrant is denied.